**F I L E D**
CLERK, U.S. DISTRICT COURT
02/08/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: _____DVE_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

April 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JASON ALLEN GREIG and<br>JEFFREY MICHAEL SPARROW,<br><br>        Defendants. | No. 8:23-cr-00016-DOC<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343: Wire Fraud;<br>18 U.S.C. § 1957: Money Laundering;<br>18 U.S.C. §§ 981(a)(1)(C) and 982,<br>and 28 U.S.C. § 2461(c): Criminal Forfeiture |

The Grand Jury charges:

COUNTS ONE THROUGH ELEVEN

[18 U.S.C. § 1343]

[ALL DEFENDANTS]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendant JASON ALLEN GREIG was the Managing Director of North America Operations and the President of The Greig Companies ("TGC"). Defendant GREIG claimed that TGC was based in Norway, involved in shipping and logistics, had a $300 million net worth in the United States, and owned over $2 billion in assets.

2. Defendant GREIG was also the Chairman of the Board and sole shareholder of Datassure Corp. ("Datassure"). Datassure Corp. is a Nevada corporation with its principal place in Irvine, California. Datassure advertises that it provides business software services and its first purported customer was to be TGC.

3. Defendant JEFFREY MICHAEL SPARROW held multiple positions at Datassure, including Chief Executive Officer.

4. Highmore Financing Co., I, LLC ("Highmore") was in the business of making alternative investments, including in the lending space. Highmore utilized the services of Zenith Insured Credit ("Zenith") to act as the buying agent for Highmore. Both Highmore and Zenith were located in New York, New York.

5. Storbyte, Inc. ("Storbyte"), located in Washington, DC, designed and manufactured computer storage servers for client businesses.

6. Equinox Business Law Group PLLC ("Equinox") was a law firm and professional limited liability company located in Bellevue, Washington.

7. Defendants GREIG and SPARROW sought from Highmore, through Zenith, financing to acquire high-end computer servers and ancillary equipment to be installed and hosted at Datassure in Irvine, California.

8. Storbyte was to provide the computer equipment to Datassure that Highmore would finance.

9. Equinox was retained by TGC and Datassure to serve as the escrow agent and was responsible for transferring the funds from Highmore to Storbyte so that Storbyte could then deliver the computer equipment to Datassure.

B. <u>THE SCHEME TO DEFRAUD</u>

10. Beginning in at least 2019 and continuing until in or around February 2020, in Orange County, within the Central District of California, and elsewhere, defendants GREIG and SPARROW, knowingly and with the intent to defraud, devised, participated in, and executed a scheme to defraud and obtain money from Highmore by means of materially false and fraudulent representations, and the concealment of material facts.

11. In carrying out the scheme, defendants GREIG and SPARROW engaged in the following fraudulent and deceptive acts, practices, and devices, among others:

a. Defendants GREIG and SPARROW, through TGC and Datassure, sought funding from Highmore, through Zenith, to purchase high-end computer servers and ancillary equipment for TGC, which they represented would be installed and hosted at Datassure in Irvine, California.

b. To qualify for the financing, defendant GREIG provided false financial information and fabricated bank statements, tax records, and accounting reports to Zenith and Highmore.

c. In response to Highmore's due diligence prior to approving the financing, defendant GREIG provided Highmore with a fraudulent TGC board resolution purportedly signed by five directors of TGC, none of whom in fact exist.

d. After securing financing from Highmore, defendant SPARROW altered Storbyte invoices for the purchase of computer equipment, falsely inflating the billed amounts by millions of dollars, and then transmitted the falsified invoices to Zenith and Highmore.

e. Based on the fraudulent invoices sent by defendant SPARROW, Highmore released funds to Equinox. Defendants GREIG and SPARROW then instructed Equinox to transfer the majority of the funds to a Datassure bank account controlled by defendant GREIG, which defendants GREIG and SPARROW used for their own personal enjoyment, such as the purchase of at least five luxury cars, and for other business expenses of Datassure that fell outside their financing agreement with Highmore.

f. From the fraudulent scheme, defendants GREIG and SPARROW secured more than $32 million in financing from Highmore and caused Highmore to lose approximately $17 million.

C. THE USE OF INTERSTATE WIRES

12. On or about the dates set forth below, within the Central District of California, and elsewhere, for the purpose of executing the above-described scheme to defraud, defendants GREIG and SPARROW caused the transmission of the following by means of wire communication in interstate commerce:

| COUNT | DATE | ITEM WIRED |
|-------|------|------------|
| ONE | 7/2/2019 | Defendant GREIG emailed a drop box to transmit due diligence materials to Zenith that ultimately contained, among other things, counterfeit tax returns. This email traveled through Washington and California. |
| TWO | 9/13/2019 | Defendant GREIG emailed due diligence materials, on which defendant SPARROW was copied, to Zenith, attaching a falsely altered bank statement making it appear that a business account controlled by defendant GREIG had a balance of more than $33 million, when in fact the account's balance was less than $10,000. This email traveled through Washington and California. |

| COUNT | DATE | ITEM WIRED |
|---|---|---|
| THREE | 9/19/2019 | Defendant SPARROW emailed a false Storbyte invoice for $3,017,000 to Zenith to facilitate the transfer of funds from Highmore to Equinox.  This email traveled through Washington and California. |
| FOUR | 9/20/2019 | Defendant GREIG emailed a resolution of the directors of TGC that was purportedly executed by five directors of TGC to Zenith, none of whom in fact exist.  This email traveled through Washington and California. |
| FIVE | 10/3/2019 | $2,952,551.63 from Equinox's Escrow account at Wells Fargo Bank in Bellevue, Washington to Datassure's Opus Bank account in Irvine, California. |
| SIX | 11/1/2019 | Defendant SPARROW emailed false Storbyte invoices for $2,109,745, $2,211,030, $2,525,660 and $2,893,087.50 to Zenith.  This email traveled through Washington and California. |
| SEVEN | 11/5/2019 | $8,612,932.12 from Equinox's Escrow account at Wells Fargo Bank in Bellevue, Washington to Datassure's Opus Bank account in Irvine, California. |
| EIGHT | 1/13/2020 | Defendant SPARROW emailed false Storbyte invoices for $5,204,325 and $452,550 to Zenith.  This email traveled through Washington and California. |
| NINE | 1/21/2020 | $5,606,830 from Equinox's Escrow account at Wells Fargo Bank in Bellevue, Washington to Datassure's Opus Bank account in Irvine, California. |
| TEN | 1/31/2020 | Defendant SPARROW emailed false Storbyte invoices for $6,986,126 and $5,833,364.80 to Zenith.  This email traveled through Washington and California. |
| ELEVEN | 2/3/2020 | $10,343,166.74 from Equinox's Escrow account at Wells Fargo Bank in Bellevue, Washington to Datassure's Opus Bank account in Irvine, California. |

COUNTS TWELVE THROUGH FOURTEEN

[18 U.S.C. § 1957]

[DEFENDANT GREIG]

13.  On or about the dates set forth below, in Orange County, within the Central District of California, and elsewhere, defendant JASON ALLEN GREIG, knowing that the funds involved represented the proceeds of some form of unlawful activity, engaged in the following monetary transactions affecting interstate commerce, in criminally derived property of a value greater than $10,000, which property, in fact, was derived from specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343:

| COUNT | DATE | TRANSACTION |
|---|---|---|
| TWELEVE | 2/18/2020 | $281,369.05 transfer from TGC's Opus Bank account to US Auto Trust DBA Aston Martin for the purchase of a 2020 Aston Vantage. |
| THIRTEEN | 3/2/2020 | $511,493.85 transfer from Datassure's Opus Bank account to Fletcher Jones Motorcars for the purchase of a 2017 Mercedes G550W44 for $241,933, a 2020 Mercedes S-Class for $169,134 and a 2020 Mercedes GLC63W4 for $119,826. |
| FOURTEEN | 3/16/2020 | $100,809.23 transfer from TGC's Opus Bank account to Tesla Motors for a 2020 Model S. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Eleven of this Indictment.

2.  Any defendant so convicted shall forfeit to the United States of America the following:

  (a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

  (b)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

7

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offenses set forth in any of Counts Twelve through Fourteen of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

   (a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

   (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

                                                A TRUE BILL

                                                /s/
                                                Foreperson

E. MARTIN ESTRADA
United States Attorney

*Scott M. Garringer*
*Deputy Chief, Criminal Division For:*

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

BENJAMIN R. BARRON
Assistant United States Attorney
Chief, Santa Ana Branch Office

JENNIFER L. WAIER
Assistant United States Attorney
Deputy Chief, Santa Ana Branch Office