**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 8:23-cr-00016-DOC** |
| Plaintiff, | Hon. David O. Carter |
| v. | United States District Judge |
| JEFFREY MICHAEL SPARROW, | Current Surrender Date: June 1, 2026 |
| Defendant. | |

**DEFENDANT'S MOTION FOR (1) JUDICIAL RECOMMENDATION OF INITIAL HOME CONFINEMENT DESIGNATION TO THE BUREAU OF PRISONS PURSUANT TO 18 U.S.C. § 3621(b)(4); (2) IN THE ALTERNATIVE, EXTENSION OF SELF-SURRENDER DATE; AND (3) SUPPLEMENTAL JUDICIAL RECOMMENDATIONS TO THE BUREAU OF PRISONS**

**I. INTRODUCTION**

Defendant Jeffrey Michael Sparrow respectfully moves this Court for three forms of relief arising out of a time-sensitive family-medical circumstance that has developed since the entry of judgment in this case.

Mr. Sparrow is scheduled to surrender voluntarily to the Bureau of Prisons on June 1, 2026. His wife, Emerald Sparrow, is in the third trimester of a pregnancy complicated by hyperemesis gravidarum and is expected to deliver the couple's third child, a son, on August 6, 2026. The Sparrows have two minor daughters at home, ages ten and seven. As described in the contemporaneously filed Declaration of Emerald Sparrow and Declaration of Jeffrey Michael Sparrow, Mr. Sparrow has become the household's sole functional caretaker over the course of this pregnancy. The current surrender date would place Mr. Sparrow in Bureau custody more

1

than two months before the expected delivery date, through the delivery itself, and across the immediate post-partum period.

Mr. Sparrow does not, by this motion, contest the underlying Judgment and Commitment Order entered on March 23, 2026 (Dkt 126). His pending appeal in the Ninth Circuit (No. 26-2026, filed April 2, 2026, Dkt 124) is the separate vehicle for any challenge to the merits of the judgment. This motion addresses only the timing and the recommended modality of execution of the imposed sentence, which remain within this Court's discretion. Mr. Sparrow has separately filed a Motion for Release on Bail Pending Appeal pursuant to 18 U.S.C. § 3143(b) and Federal Rule of Appellate Procedure 9(b). The Bail-Pending-Appeal Motion is filed in the alternative, for the contingency in which this Court declines the relief sought in the present motion. The two motions are layered alternatives, not duplicative requests.

Mr. Sparrow requests three forms of relief, in order of preference:

A. A judicial recommendation, pursuant to 18 U.S.C. § 3621(b)(4), that the Bureau of Prisons designate Mr. Sparrow to home confinement as his initial placement, with electronic monitoring, at his residence at 1929 Fairhaven Lane, Murfreesboro, Tennessee 37128, until the Bureau determines, in its discretion under 18 U.S.C. § 3621(b), that transfer to a facility consistent with this Court's prior recommendations is appropriate;

B. In the alternative, an extension of the voluntary surrender date from June 1, 2026 to October 1, 2026, or alternatively to September 1, 2026, under the Court's discretionary authority over the timing of voluntary surrender; and

C. Supplemental judicial recommendations to the Bureau of Prisons under 18 U.S.C. § 3621(b)(4) concerning RDAP eligibility evaluation, facility designation near family, First Step

Act programming access, and the maximum lawful prerelease placement under 18 U.S.C. § 3624(c).

Each form of relief lies within established judicial authority. The first and third are recommendations to the Bureau; the Bureau retains its statutory designation authority under 18 U.S.C. § 3621(b). The second is an exercise of the Court's discretionary authority over the timing of its own surrender order, which survives the filing of the notice of appeal because the surrender date is collateral to the merits of the judgment. Griggs v. Provident Consumer Disc. Co., 459 U.S. 56, 58 (1982); United States v. Ortega-Lopez, 988 F.2d 70, 72 (9th Cir. 1993).

The relief Mr. Sparrow requests is supported by the contemporaneously filed declarations, by the case-specific factual record summarized below, and by the federal sentencing framework as it stands today. It is supported by the documented family-medical circumstances described in Section III. It is consistent with the Court's prior recommendations in the Judgment and Commitment Order. It does not seek to disturb the sentence imposed.

## II. JURISDICTION AND PROCEDURAL POSTURE

The Court retains authority to address each form of relief requested in this motion notwithstanding the pending appeal. The filing of a notice of appeal divests the district court of jurisdiction over those aspects of the case involved in the appeal but does not divest the court of authority over collateral matters. Griggs, 459 U.S. at 58. The Ninth Circuit has applied that principle to matters concerning the execution of sentence, including the timing of voluntary surrender. Ortega-Lopez, 988 F.2d at 72. The surrender date, the modality of initial placement under 18 U.S.C. § 3621(b), and the Court's recommendations to the Bureau of Prisons each fall within that collateral category.

The substantive standards governing the requested relief are equally settled. Under 18 U.S.C. § 3143(a)(1), a defendant who has been found guilty and is awaiting imposition or execution of sentence shall be detained unless the court finds by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community. That standard, satisfied at sentencing when this Court permitted voluntary surrender, remains satisfied today and is independently supported by the record set out below.

Under 18 U.S.C. § 3621(b), the Bureau of Prisons designates the place of imprisonment, considering: (1) the resources of the contemplated facility; (2) the nature and circumstances of the offense; (3) the history and characteristics of the prisoner; (4) any statement by the court that imposed the sentence, including any recommendation, made in accordance with subsection (b)(4); and (5) any pertinent policy statement issued by the Sentencing Commission. The Court's role under § 3621(b)(4) is to issue statements and recommendations for the Bureau's consideration; the designation decision itself rests with the Bureau.

This motion respects that allocation. The primary relief requested is a judicial recommendation to the Bureau under § 3621(b)(4), not an order directing a designation. The Bureau retains its statutory authority.

## III. FACTUAL BACKGROUND

### A. The sentence and the surrender order

On March 23, 2026, this Court sentenced Mr. Sparrow, pursuant to a binding plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), to thirty months of imprisonment followed by three years of supervised release on Count Ten, charging wire fraud in violation of 18 U.S.C. § 1343. Dkt 126. The remaining counts were dismissed on the

government's motion. The advisory Guidelines range reflected in the Presentence Investigation Report was 41 to 51 months. The imposed sentence was below the advisory range.

The Court ordered restitution in the amount of $11,828,879, jointly and severally with co-defendant Jason Allen Greig. Id. The Court found that Mr. Sparrow is "unable to pay and is not likely to become able to pay any fine," waived imposition of a fine on the same finding, and waived interest on the restitution amount pursuant to 18 U.S.C. § 3612(f)(3). Dkt 126 at 2.

The Court recommended that Mr. Sparrow be designated to a Memphis, Tennessee minimum-security facility to facilitate visitation with family, friends, and loved ones, and recommended participation in the Residential Drug Abuse Program. Dkt 126 at 3.

The Court permitted Mr. Sparrow to surrender voluntarily and set the surrender date at noon on June 1, 2026.

Mr. Sparrow timely filed a notice of appeal on April 2, 2026. Dkt 124. The appeal is pending before the Ninth Circuit as No. 26-2026.

## B. Compliance record

Mr. Sparrow was arraigned on February 13, 2023. Dkt 7. In the more than thirty-nine months since arraignment, he has appeared at every court proceeding required of him, complied with every condition of release imposed by United States Pretrial Services and by this Court, and made no attempt to evade the Court's jurisdiction. He has not contacted, attempted to contact, or interfered with any victim, witness, or party to this case. He does not own a firearm, has no access to a firearm, has no record of substance abuse or violence, and his passport is surrendered. Pretrial Services has reported no concerns.

This Court already determined at sentencing, when it permitted voluntary surrender rather than ordering immediate remand into custody, that Mr. Sparrow is neither a flight risk nor a danger. Nothing in the intervening period suggests any change in those facts.

**C. Mrs. Sparrow's pregnancy and hyperemesis gravidarum diagnosis**

Mr. Sparrow and his wife, Emerald Sparrow, reside at 1929 Fairhaven Lane, Murfreesboro, Tennessee 37128, with their two minor daughters, Serenity Rain Sparrow (age ten) and Haven Ivy Sparrow (age seven). Decl. of Emerald Sparrow ("Emerald Decl.") ¶ 1; Decl. of Jeffrey Michael Sparrow ("Jeff Decl.") ¶ 1. Emerald is pregnant with the couple's third child, a son whose name will be Captain Jeffrey Sparrow. Emerald Decl. ¶ 1. Her due date is August 6, 2026, approximately sixty-six days after the current June 1 surrender date. Id.

During this pregnancy, Emerald has been diagnosed with hyperemesis gravidarum, a severe pregnancy complication that is medically distinct from ordinary morning sickness. Emerald Decl. ¶ 5. Her prenatal care is provided by Nurture Birth Services, a Tennessee midwifery practice in Mount Juliet, Tennessee. Id. She has received multiple outpatient intravenous hydration treatments from Mobile IV Medics. Id. She has been prescribed doxylamine-pyridoxine (Diclegis) for antiemetic management of the condition. Id. During one episode, the severity of her dehydration and inability to retain fluids required emergency-room treatment at TriStar StoneCrest Medical Center on February 2, 2026. Id.

Throughout this pregnancy, Emerald has experienced episodes during which she has been unable to keep food or fluids down without medication, unable to drive, unable to stand long enough to prepare a meal or bathe her daughters, and unable to perform routine household tasks. Emerald Decl. ¶ 5.

6

**D. Mr. Sparrow's role as sole functional caretaker**

Because of the limitations Emerald's diagnosis has imposed on her, Mr. Sparrow has carried the day-to-day work of the household and the care of the family's two daughters across this pregnancy. Emerald Decl. ¶ 7; Jeff Decl. ¶¶ 6-7. He prepares the children's meals each day. He drives Serenity and Haven to Heart Christian Academy, where Serenity is in the fifth grade in Mrs. Jones's class and Haven is in the first grade in Mrs. Richardson's class. He alternates afternoon pickup with Emerald as her health permits. He drives both daughters to their weekly activities (currently gymnastics for both, theatre and guitar for Serenity). He has accompanied Emerald to each prenatal appointment at Nurture Birth Services, has been present for each in-home IV hydration session, and was the parent who drove Emerald to and managed her care at the February 2, 2026 ER visit. He handles grocery shopping, meal preparation, laundry, household cleaning, and night wakeups when Emerald has been ill.

Neither set of grandparents is able to help during the period of recovery after delivery. Emerald Decl. ¶ 8. The Sparrows have no neighbors, friends, or community members who have provided supplemental daily caretaking during this pregnancy. Jeff Decl. ¶ 7. The full daily caretaking load has fallen on Mr. Sparrow.

The realistic middle-Tennessee market cost of replacing Mr. Sparrow's caretaking work for the eight-week perinatal window alone (combined overnight postpartum doula, full-time nanny experienced in hyperemesis gravidarum care, and household management) is in the range of $40,000 to $50,000. Emerald Decl. ¶ 9. The Sparrows do not have the means to purchase substitute care at that scale. This Court has already found that Mr. Sparrow is unable to pay any fine and waived interest on restitution on the same basis. Dkt 126 at 2.

7

**E. The planned home birth and the post-partum recovery window**

The Sparrows have planned to deliver Captain at home, consistent with the way Serenity and Haven were born. Emerald Decl. ¶ 3; Jeff Decl. ¶ 8. Serenity was born at home on June 6, 2015, attended by South Coast Midwifery. Haven was born at home on September 5, 2018, attended by South Coast Midwifery. Mr. Sparrow was the support person at both births. For the third birth, the attending midwife is Taylore, of Nurture Birth Services, in Mount Juliet, Tennessee. Emerald and her midwife have confirmed that a capable supportive adult must be physically present with Emerald for the duration of labor and for the early post-partum period. Mr. Sparrow is Emerald's chosen and only planned support person. Emerald Decl. ¶ 4; Jeff Decl. ¶ 9.

Following the birth, Emerald expects to require a recovery period of approximately six to eight weeks, and longer to the extent the hyperemesis gravidarum that has complicated this pregnancy prolongs her physical recovery. Emerald Decl. ¶ 6. During that recovery period, she will be physically unable to care for the two older daughters, maintain the household, or meet the daily needs of a newborn without the consistent presence of another adult capable of doing that work.

**F. The Court's family-visitation rationale cannot be delivered at any Bureau facility during this window**

The Court recommended a Memphis, Tennessee minimum-security facility expressly "to facilitate visitation with family, friends, and loved ones." Dkt 126 at 3. FCI Memphis is approximately 210 road miles from the Sparrow home in Murfreesboro, a round-trip drive of roughly seven hours by passenger vehicle.

8

During the period that begins with the late third trimester and continues through the post-partum recovery window, Emerald will not be cleared to make a seven-hour round-trip drive with a newborn and two minor children. Emerald Decl. ¶ 10. Standard medical guidance discourages extended travel in late pregnancy and during the immediate post-partum period, with additional caution for patients managing hyperemesis gravidarum, where dehydration and electrolyte imbalance carry independent risk. Pediatric guidance discourages unnecessary long-distance travel for newborns through the early weeks of life. The combined practical effect is that, during the months in which family contact matters most, the family-visitation rationale on which the Court's recommendation rested cannot be delivered if Mr. Sparrow is in custody at Memphis.

Two other facts compound the visitation issue. First, the Judgment provides that, in the absence of a Bureau designation, Mr. Sparrow is to surrender to the United States Marshal at the United States Court House in Santa Ana, California. Dkt 126. As of the date of this motion, Mr. Sparrow has not been contacted by the Bureau regarding a designation. If the in-absence fallback applies, Emerald and the children will be entirely unable to visit. Second, even after the post-partum window, a 210-mile drive with a newborn, an infant, and two school-age children is impracticable to sustain on more than an occasional basis.

The relief requested in this motion addresses that practical reality directly. Home confinement at the Sparrow residence preserves family contact in full. An extension of the self-surrender date preserves family contact through the post-partum window. A supplemental recommendation to the Bureau that any institutional placement be made at a facility near the family, with maximum prerelease placement in a Residential Reentry Center within driving range of Murfreesboro, preserves the Court's stated rationale to the maximum extent feasible.

**G. The recovery picture in this case**

The Bureau's designation work sometimes reads sentencing-stage filings that frame defendant compensation in maximum-permissible terms. Two corrective points are relevant to the § 3621(b)(3) history-and-characteristics factor.

First, Mr. Sparrow's verified personal compensation from the relevant period totals approximately $225,274.85 across bank records produced from his primary depository institution. That figure represents approximately 0.70 percent of the $32,015,153.30 funded by the investor through the relevant transactions. The "up to $500,000" language that appears in the plea agreement is a stipulated ceiling, not an asserted actual figure.

Second, the investor's recovery picture is materially different from the figure that appears in popular characterizations. Of the $32,015,153.30 funded (verified through First Republic Bank wire debit confirmations produced in discovery), the investor received approximately $14,186,273.85 in direct cash repayment via three Opus Bank wire transfers, plus a $6,000,000 Euler Hermes insurance settlement (the CIBC Bank wire confirmation appears at Dkt 123 Exhibit I), plus repossessed hardware and software whose value across three independent appraisals (22dot6 Labs, Premio, and HYPERAMS, all dated 2020) ranges from $16,234,000 (conservative orderly liquidation) to $34,000,000 (HYPERAMS Liquidation Value In Place). Total investor recovery, even on the most conservative hardware appraisal, exceeds the principal funded. The restitution order ($11,828,879, joint and several with the co-defendant) is the Court's lawful order and is not disturbed here.

These facts bear on the § 3621(b)(3) history-and-characteristics factor and on the parsimony assessment under 18 U.S.C. § 3553(a) that informed this Court's below-Guidelines sentence. They are not presented as grounds to revisit the sentence imposed.

## IV. ARGUMENT

**A. The Court should issue a judicial recommendation under 18 U.S.C. § 3621(b)(4) that the Bureau of Prisons designate Mr. Sparrow to home confinement as his initial placement**

Mr. Sparrow's primary request is that this Court issue a judicial recommendation, pursuant to 18 U.S.C. § 3621(b)(4), that the Bureau of Prisons designate him to home confinement, with electronic monitoring, at 1929 Fairhaven Lane, Murfreesboro, Tennessee 37128, as his initial place of imprisonment. The Bureau retains its statutory authority under § 3621(b) to determine the place of imprisonment. The relief Mr. Sparrow asks of this Court is the addition of a judicial recommendation under (b)(4) for the Bureau's consideration alongside the recommendations the Court has already made.

**1. The five § 3621(b) factors each support a recommendation for initial home confinement.**

The first factor (resources of the facility) is satisfied. The Sparrow residence is a single-family home, owner-occupied since November 18, 2024. It is suitable for electronic monitoring and home-confinement supervision by the United States Probation Office of the Middle District of Tennessee. Jeff Decl. ¶ 15.

The second factor (nature and circumstances of the offense) supports home confinement. The conviction is for a single count of wire fraud. The conduct involved no violence, no threat of violence, no weapon, no narcotics, no minor victims, and no public-corruption exposure. The civil parallel proceeding in the Southern District of New York dismissed the RICO and state-law claims against Mr. Sparrow on a Rule 12(b)(6) motion in 2023. Highmore Financing Co. I, LLC v. The Greig Companies, LLC, No. 1:21-cv-11021-AT-JW (S.D.N.Y. July 31, 2023), ECF Doc 202. The dismissal order addressed Mr. Sparrow's role directly: "Plaintiff does not allege how

11

Sparrow, personally, was enriched," id. at 19, and "neither Plaintiff, nor Sparrow, were parties to the escrow agreements," id. at 18.

The third factor (history and characteristics of the prisoner) supports home confinement. Mr. Sparrow is a first-time offender in Criminal History Category I. He is forty-one years old. He has been on release for more than thirty-nine months without incident since his arraignment on February 13, 2023. He has continuous lawful employment history, college coursework completed, an intact family with three children including a newborn due on August 6, 2026, and a stable owner-occupied residence. The family-medical record set out in Section III is the operative present circumstance.

The fourth factor (any statement by the court) is the statement made by this motion: a recommendation that initial designation be made to home confinement. This is in addition to the recommendations already made in the Judgment and Commitment Order. Dkt 126 at 3. As described in Section IV.A.3 below, the Memphis-facility recommendation in the J&C is not displaced by this additional recommendation; it is supplemented by a placement recommendation that, for the duration of the family-medical window, better serves the family-visitation rationale the J&C invoked.

The fifth factor (pertinent policy statements of the Sentencing Commission) is consistent with the recommendation. The Sentencing Commission has long recognized alternatives to incarceration as appropriate for first-time nonviolent offenders. The Commission's April 16, 2026 amendment to U.S.S.G. § 2B1.1, effective November 1, 2026, lowers the advisory range applicable to this loss figure from 41-51 months to 33-41 months, leaving the imposed 30-month sentence still below the recalibrated floor. The amendment is described further in Section IV.E

12

below. The relevance here is narrow: the Commission's recent policy direction is consistent with the proportionality assessment that supports modality calibration in Mr. Sparrow's case.

**2. The Court's prior Memphis recommendation does not foreclose this further recommendation.**

The J&C entered on March 23, 2026 recommended a Memphis, Tennessee minimum-security facility to facilitate visitation. Dkt 126 at 3. That recommendation was made on the record as it then existed. Mr. Sparrow's family-medical circumstances, as documented in the contemporaneously filed declarations, have developed since sentencing. The current motion does not ask the Court to withdraw or modify the Memphis recommendation. It asks for a supplemental recommendation that, for the period during which Emerald cannot make the 7-hour Memphis round-trip drive, the Bureau consider home confinement as the initial placement.

The Bureau retains discretion to weigh the Court's statements together. Under § 3621(b), the Bureau considers any statement by the court alongside the other four factors. A supplemental recommendation is therefore properly an addition to the record the Bureau will consider, not a contradiction of the original.

**3. This Court has previously exercised similar discretion in comparable circumstances.**

In United States v. D'Antonio, No. 8:13-cr-00208 (C.D. Cal. July 2017) (Carter, J.), this Court granted an ex parte application to continue the voluntary surrender date by approximately one month and recommended a Southern California facility designation based on the defendant's family ties. The defendant in D'Antonio had a more serious record and a substantially longer sentence than Mr. Sparrow, and the relief granted there was directed to the same family-related considerations presented in the contemporaneously filed declarations here. The Court's authority to issue judicial recommendations and to manage the timing of voluntary surrender is well-

settled. The present motion asks only for the established exercise of that discretion on a record that supports it.

**B. In the alternative, the Court should extend the voluntary surrender date**

If the Court declines to issue a § 3621(b)(4) recommendation for initial home confinement designation, Mr. Sparrow respectfully requests, in the alternative, that the Court extend the voluntary surrender date from June 1, 2026 to October 1, 2026, or alternatively to September 1, 2026.

**1. The Court retains discretionary authority over the timing of voluntary surrender notwithstanding the pending appeal.**

The Court permitted voluntary surrender at sentencing under 18 U.S.C. § 3143(a)(1). The timing of voluntary surrender is collateral to the merits of the judgment and is not divested by the filing of the notice of appeal. Griggs, 459 U.S. at 58; Ortega-Lopez, 988 F.2d at 72. Modification of a surrender date is a routine exercise of the sentencing court's continuing authority over execution of its own order.

**2. The § 3143(a)(1) clear-and-convincing standard is satisfied.**

Section 3143(a)(1) requires a finding by clear and convincing evidence that the defendant is not likely to flee or pose a danger to the safety of any other person or the community. That finding is supported by:

Complete compliance since arraignment. Mr. Sparrow has remained on release since February 13, 2023 without incident. He has not missed court, has not absconded, has not violated any release condition, and has not given Pretrial Services any cause for concern. Jeff Decl. ¶ 13.

14

Stable residence and family ties. Mr. Sparrow lives with his wife and two minor children at a fixed residence in Murfreesboro, Tennessee. Decl. ¶¶ 1, 15. The family includes a third child expected on August 6, 2026.

No criminal history. Mr. Sparrow is in Criminal History Category I, with no prior criminal convictions of any kind. Jeff Decl. ¶ 2.

Nonviolent offense. The conviction is for a nonviolent economic offense. There is no allegation of violent conduct, weapon possession, threat, or danger to the public. Jeff Decl. ¶ 14.

Surrendered passport. Mr. Sparrow's passport has been surrendered. Jeff Decl. ¶ 14.

The Court's original decision to permit voluntary surrender reflected a finding, implicit if not express, that immediate detention was unnecessary and that Mr. Sparrow could be relied upon to report as directed. Nothing has changed since sentencing that cuts the other way. If anything, the family-medical circumstances developed in the intervening period reinforce his ties to the community and his incentive to comply with any order this Court enters.

**3. Good cause supports an extension.**

Good cause supports modification of the surrender date. The hardship is concrete and time-limited: a medically complicated pregnancy with a specific anticipated delivery window and the needs of a household that includes two minor children and a soon-to-be newborn. The requested extension is reasonably tailored to that problem and is not open-ended. There is no cognizable prejudice to the government. The Court's ability to enforce the judgment is not impaired by a date-specific extension, and the government's interest in execution of sentence is fully preserved.

The extension is also consistent with the purposes of sentencing under 18 U.S.C. § 3553(a). Permitting a first-time, nonviolent defendant to remain present through the birth of his

son, the resolution of his wife's pregnancy complication, and the immediate post-partum recovery does not undermine respect for the law, deterrence, just punishment, or the protection of the public. It permits the orderly administration of sentence on a calendar that respects the individualized nature of criminal judgment that this Court already made at sentencing in imposing a below-Guidelines disposition.

**4. The requested extension dates.**

Mr. Sparrow requests an extension to October 1, 2026, which gives the family time to move through delivery (expected August 6) and the initial post-partum stabilization period before he begins service of sentence. In the alternative, Mr. Sparrow requests an extension to September 1, 2026, which would at least allow him to remain present through the expected delivery itself and the earliest recovery period.

**C. The Court should issue supplemental judicial recommendations to the Bureau of Prisons**

Independent of the disposition of the primary and alternative relief above, Mr. Sparrow respectfully requests that the Court supplement its existing recommendations to the Bureau of Prisons under 18 U.S.C. § 3621(b)(4) with the following:

**1.** That the Bureau evaluate Mr. Sparrow's eligibility for the Residential Drug Abuse Program (RDAP) at the earliest practicable opportunity following intake, and, if the Bureau determines he is clinically eligible, place him in the program as soon as feasible. 18 U.S.C. § 3621(e)(2)(B). Successful completion may result in up to 12 months of additional reduction at the Bureau's discretion. The request is for a recommendation; the eligibility determination, placement, and any reduction remain exclusively within the Bureau's discretion.

**2.** That the Bureau designate Mr. Sparrow, to the extent practicable and consistent with Bureau policies and resources, to a minimum-security facility in the Middle District of

Tennessee or otherwise as close to Murfreesboro as practicable. The Court's prior Memphis recommendation reflected a family-visitation rationale. To the extent the Bureau is unable to designate a facility closer to Murfreesboro, Mr. Sparrow respectfully requests that the Court further recommend the Bureau consider designation to the Nashville Residential Reentry Center (Dismas Charities Nashville), the federally contracted Residential Reentry Center serving the Middle District of Tennessee, as a placement that better serves the family-visitation rationale during the medical recovery window described in Section III.

**3.** That the Bureau afford Mr. Sparrow early access to First Step Act evidence-based recidivism-reduction programming and productive activities, with any earned-time credits to be determined exclusively by the Bureau under 18 U.S.C. § 3632(d)(4) and 28 C.F.R. § 523.42.

**4.** That the Bureau consider Mr. Sparrow, when statutorily appropriate, for the maximum amount of prerelease placement permitted by law, including Residential Reentry Center placement of up to 12 months under 18 U.S.C. § 3624(c)(1) and home confinement of the shorter of 10 percent of the term or six months under 18 U.S.C. § 3624(c)(2). The Bureau retains sole authority over such determinations and any judicial recommendation is nonbinding.

These recommendations are properly cabined. The Court cannot order the Bureau to place Mr. Sparrow in a particular institution, admit him to RDAP, award any specific sentence reduction, grant any specific amount of First Step Act credits, or provide a specific duration of halfway-house placement. Those are executive decisions committed to the Bureau by statute. Mr. Sparrow asks only that the Court make recommendations the Bureau will consider under § 3621(b)(4).

17

**D. The federal time-credit framework will substantially compress actual federal custody and supports each form of relief requested**

The federal time-credit framework that applies to Mr. Sparrow's 30-month sentence is relevant to the modality and timing calibration this motion seeks. Three credit categories operate concurrently.

**1. Good Conduct Time.**

Under 18 U.S.C. § 3624(b), as amended by Section 102 of the First Step Act of 2018, Mr. Sparrow is eligible to earn good conduct time at the rate of up to 54 days per year of the term of imprisonment imposed by the court. See Barber v. Thomas, 560 U.S. 474 (2010) (pre-First Step Act calculation); 18 U.S.C. § 3624(b)(1) (post-First Step Act calculation against the sentence imposed). Over a 30-month sentence, that yields approximately 135 days of credit, applied at the end of the term, contingent on disciplinary compliance.

**2. First Step Act earned time credits.**

Under 18 U.S.C. § 3632(d)(4) and the Bureau's implementing regulations at 28 C.F.R. § 523.42, eligible inmates earn 10 days of credit for every 30 days of successful evidence-based recidivism reduction programming on arrival, and 15 days of credit for every 30 days following two consecutive assessments at minimum or low PATTERN risk classification. 28 C.F.R. § 523.42(b)(2). Mr. Sparrow's PATTERN inputs are favorable: Criminal History Category I, age forty-one, no disciplinary history, college coursework completed, intact family, continuous lawful employment history, and a stable owner-occupied residence.

The Ninth Circuit's decision in Gonzalez v. Herrera, No. 24-2371 (9th Cir. Aug. 19, 2025) (published) (Mendoza, J., joined by Tashima and Nguyen, JJ.), establishes that earned time credits "shall be applied to reduce the length of a supervised release term," id., slip op. at

14, in addition to advancing the date of prerelease custody or supervised release. The Ninth Circuit's holding rests on the plain text of 18 U.S.C. § 3632(d)(4)(C) and the parallel framework in 18 U.S.C. § 3624(g). The relevance to the present motion is twofold. First, Gonzalez confirms that the FSA credit framework actually operates to reduce the federal custodial and supervision footprint of the imposed sentence. Second, the Gonzalez record itself reflects that FSA-eligible programming may be completed during home confinement; Mr. Gonzalez participated in barbering, trucking, electrician, and machine-shop programming while on home confinement, and earned credits during that period. Gonzalez, slip op. at 5-6. That is directly relevant to the modality calibration this motion requests.

**3. RDAP discretionary reduction.**

Subject to the Bureau's clinical eligibility determination at intake, Mr. Sparrow may be considered for up to 12 months of additional sentence reduction under 18 U.S.C. § 3621(e)(2)(B). The Court recommended RDAP at sentencing. Dkt 126 at 3. The eligibility determination, the placement, and the amount of any reduction remain in the Bureau's discretion.

**4. Combined effect.**

Read together, these three credit categories indicate that the actual period of secure federal custody on Mr. Sparrow's 30-month sentence is materially shorter than 30 months. The combined effect, while contingent on Bureau determinations and compliance, can compress secure-custody time to a fraction of the imposed term. That is relevant to two things this motion asks the Court to consider: (a) the proportionality of the modality calibration requested (home confinement at intake, or extension followed by maximum lawful prerelease placement); and (b) the operational reality that Mr. Sparrow's sentence will, in any event, conclude with a significant

community-based component, so initial home confinement is consistent with the trajectory the existing framework already contemplates.

**E. The April 16, 2026 amendment to U.S.S.G. § 2B1.1 is consistent with the calibration this motion requests**

On April 16, 2026, the United States Sentencing Commission unanimously voted to amend the loss table at U.S.S.G. § 2B1.1, effective November 1, 2026, applying Consumer Price Index inflation adjustments to the monetary thresholds. United States Sentencing Comm'n, Amendments to the Sentencing Guidelines, Policy Statements, and Official Commentary, Amendment 2 (Inflationary Adjustments to Monetary Tables) (Apr. 16, 2026) (effective Nov. 1, 2026). The amendment lowers the advisory range applicable to the loss figure at issue in this case from 41-51 months to 33-41 months.

The imposed 30-month sentence sat below the advisory range as of the date of sentencing. As of November 1, 2026, the same 30-month sentence will continue to sit below the floor of the recalibrated range. The amendment does not, by itself, modify the sentence imposed; this motion does not contend otherwise. The amendment is presented for the limited purpose of confirming that the Sentencing Commission's most recent policy direction is consistent with the proportionality assessment that informed this Court's below-Guidelines disposition and is consistent with the modality calibration requested in this motion.

**V. CONCLUSION**

For the foregoing reasons, Mr. Sparrow respectfully requests that the Court enter an order:

20

A. Pursuant to 18 U.S.C. § 3621(b)(4), recommending that the Bureau of Prisons designate Mr. Sparrow to home confinement, with electronic monitoring, at his residence at 1929 Fairhaven Lane, Murfreesboro, Tennessee 37128, as his initial place of imprisonment;

B. In the alternative, extending the voluntary surrender date from June 1, 2026 to October 1, 2026, or, in the further alternative, to September 1, 2026, and continuing all previously imposed conditions of release pending surrender; and

C. Pursuant to 18 U.S.C. § 3621(b)(4), supplementing its prior recommendations to the Bureau of Prisons with recommendations that the Bureau (i) evaluate Mr. Sparrow for RDAP at the earliest practicable opportunity and place him in the program if it determines he is clinically eligible; (ii) designate Mr. Sparrow, to the extent practicable, to a minimum-security facility in the Middle District of Tennessee or otherwise as close to Murfreesboro as practicable, with consideration of designation to the Nashville Residential Reentry Center as an alternative serving the family-visitation rationale; (iii) afford Mr. Sparrow early access to evidence-based recidivism-reduction programming and productive activities, with any earned-time credits to be determined exclusively by the Bureau under applicable law; and (iv) consider Mr. Sparrow, when appropriate and lawful, for the maximum prerelease placement that the Bureau determines is warranted, including Residential Reentry Center placement under 18 U.S.C. § 3624(c)(1) and home confinement under 18 U.S.C. § 3624(c)(2).

Dated: May 20, 2026                                        Respectfully submitted,

/s/ Barry D. Silbermann
BARRY D. SILBERMANN, BSIE, JD
California State Bar No. 69402
LAW OFFICE OF BARRY D. SILBERMANN
3896 Carpenter Avenue
Studio City, California 91604
Telephone: (310) 702-6699

21

Email: bdspc@aol.com
Attorney for Defendant
JEFFREY MICHAEL SPARROW

## CERTIFICATE OF SERVICE

I, Barry D. Silbermann, hereby certify that on May 20, 2026, I caused a true and correct copy of the following documents to be filed electronically via the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

Service via CM/ECF on the following counsel of record:

Jennifer L. Waier
Assistant United States Attorney
United States Attorney's Office
Central District of California
411 West Fourth Street, Suite 8000
Santa Ana, California 92701
Jennifer.Waier@usdoj.gov

Dated: May 20, 2026                    Respectfully submitted,

/s/ Barry D. Silbermann
BARRY D. SILBERMANN, BSIE, JD
California State Bar No. 69402
LAW OFFICE OF BARRY D. SILBERMANN
3896 Carpenter Avenue
Studio City, California 91604
Telephone: (310) 702-6699
Email: bdspc@aol.com
Attorney for Defendant

23