# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | **Case No. 8:23-cr-00016-DOC** |
| Plaintiff, | **DEFENDANT'S SUPPLEMENT IN SUPPORT OF (1) MOTION FOR JUDICIAL RECOMMENDATION OF INITIAL HOME CONFINEMENT DESIGNATION, IN THE ALTERNATIVE FOR EXTENSION OF SELF-SURRENDER DATE, AND FOR SUPPLEMENTAL JUDICIAL RECOMMENDATIONS TO THE BUREAU OF PRISONS [DKT. 143]; AND (2) MOTION FOR BAIL PENDING APPEAL PURSUANT TO 18 U.S.C. § 3143(b) AND FRAP 9(b) [DKT. 143-1]** |
| v. | |
| JASON GREIG and JEFF SPARROW, | |
| Defendants. | |

Current Surrender Date: June 1, 2026

Judge: Hon. David O. Carter

**DEFENDANT'S SUPPLEMENT IN SUPPORT OF (1) MOTION FOR JUDICIAL RECOMMENDATION OF INITIAL HOME CONFINEMENT DESIGNATION, IN THE ALTERNATIVE FOR EXTENSION OF SELF-SURRENDER DATE, AND FOR SUPPLEMENTAL JUDICIAL RECOMMENDATIONS TO THE BUREAU OF PRISONS [DKT. 143]; AND (2) MOTION FOR BAIL PENDING APPEAL PURSUANT TO 18 U.S.C. § 3143(B) AND FRAP 9(B) [DKT. 143-1]; SELF-SURRENDER DEADLINE: JUNE 1, 2026, 12:00 NOON**

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7-3**

Pursuant to L.R. 7-3, counsel for Mr. Sparrow conferred with Assistant United States

Attorney Jennifer L. Waier regarding Dkt. 143 and Dkt. 143-1 in advance of their filing on May

20, 2026. The parties were unable to reach resolution. This reply addresses Dkt. 144 and supports the merits of the underlying motions.

## INTRODUCTION

This reply addresses two matters arising from the filings since May 20, 2026.

First, Mr. Sparrow accepts the Bureau's designation of FPC Montgomery without reservation. Following the Government's notification, defense counsel separately confirmed the designation by direct contact with FPC Montgomery on May 26, 2026. Mr. Sparrow accordingly withdraws as moot the Santa Ana fallback discussion in Dkt. 143 § III.F and Decl. of Jeffrey M. Sparrow ¶ 16 (Dkt. 143-3) and refines the relief requested to a single calibrated request: extension of the self-surrender date from June 1, 2026 to August 20, 2026 (approximately 14 days following the expected delivery of Mr. Sparrow's son), or such other date as best comports with the family-medical record and the Bureau's intake procedures.

Second, the pending appeal (No. 26-2026) presents three independently substantial questions of law and fact under 18 U.S.C. § 3143(b)(1)(B). The first relates to the voluntariness of the January 21, 2025 guilty plea in light of pre-plea facts not disclosed to Mr. Sparrow at the time of the plea. The second relates to the methodology used to calculate the loss amount that drove the offense-level enhancement, including the proper application of the credits-against-loss provisions of U.S.S.G. § 2B1.1 cmt. n.3(D). The third relates to the procedural reasonableness of the imposed sentence in light of the § 3553(a)(6) and 18 U.S.C. § 3664(h) co-defendant comparison. Each question, resolved in Mr. Sparrow's favor, would likely result in a remedy described in § 3143(b)(1)(B)(i)–(iv).[2]

Page 2 of 17

**I. NARROWED RELIEF: EXTENSION OF SURRENDER DATE TO AUGUST 20, 2026**

In light of the FPC Montgomery designation and Mr. Sparrow's acceptance of it, Mr. Sparrow narrows the relief sought in Dkt. 143 to a single calibrated request: extension of the self-surrender date from June 1, 2026 to August 20, 2026.

The August 20 date is anchored to a specific medical event documented in the existing sworn record:

- June through August 6, 2026: third trimester and home delivery in Murfreesboro. Mr. Sparrow remains present and continues the daily caretaking that has substituted for his wife's transport and household functions during her hyperemesis-gravidarum illness. Decl. of Jeffrey M. Sparrow ¶¶ 4, 6–7 (Dkt. 143-3); Decl. of Emerald Sparrow ¶¶ 5, 7–8 (Dkt. 143-4). The Captain delivery proceeds on or about August 6, 2026 at home with the existing midwife (Taylore Estep, Nurture Birth Services, Mount Juliet, Tennessee) and the written birth plan already in place. The medical providers are in Murfreesboro and Mount Juliet; relocating prenatal care in the third trimester is not medically advisable and the existing care plan is intact. Ms. Estep has confirmed in writing, on Nurture Birth Services letterhead and signed, that Mrs. Sparrow "is not cleared for travel as long distance trips in car or via plane are not safe for impending delivery," and that Mr. Sparrow's care is "vital for her health and the health of her unborn son, that she be taken care of by Jeff for the remainder of her pregnancy and for the immediate postpartum period; ideally 6 weeks in length, with minimum to be the first 2 weeks as that is the most critical time for the health and wellbeing of vulnerable mothers and newborns." Letter of Taylore Estep, CPM-TN, dated May 28, 2026 (Ex. A hereto).

- August 6 through August 20, 2026: immediate postpartum recovery window. Mr. Sparrow remains present through the first 14 days postpartum. Mrs. Sparrow experienced

Page 3 of 17

postpartum depression following both prior home births, with the first 24–48 hours marked by an approximately 90 percent drop in estrogen and progesterone and a recovery period of weeks to months for hormonal regulation. Decl. of Emerald Sparrow ¶ 6 (Dkt. 143-4). The Captain delivery presents the same clinical risk. The attending midwife has confirmed that a capable supportive adult must be physically present with Mrs. Sparrow for the duration of labor and for the early postpartum period. Decl. of Jeffrey M. Sparrow ¶ 9 (Dkt. 143-3).

- August 20, 2026: self-surrender to FPC Montgomery. Mr. Sparrow self-surrenders to FPC Montgomery on August 20, 2026 from the Murfreesboro residence. The family's September 2026 relocation to the Hinrichs household in Pensacola, Florida proceeds without him as the operational logistics. Pensacola is approximately 260 road miles from FPC Montgomery, or roughly 2.5 to 3 hours one way, within the Bureau's "as close as practicable" framework under 18 U.S.C. § 3621(b). The Court's family-visitation rationale at sentencing, Dkt. 126 at 3, is preserved by the relocation, which occurs without disruption to Mr. Sparrow's surrender.

The 80-day extension requested here is materially narrower than the four-month extension Dkt. 143 initially proposed and is anchored to a documented, time-bounded medical event rather than a calendar date. The Court has previously exercised analogous discretion to permit a defendant in this District to remain present through a family-medical event before surrender.[3]

The Court's prior finding under 18 U.S.C. § 3143(a)(1), by clear and convincing evidence that Mr. Sparrow is not likely to flee or pose a danger, is unchanged. Mr. Sparrow has remained on release continuously since his arraignment on February 13, 2023, for more than thirty-nine months, without incident. He has no firearm, no firearm access, no record of substance abuse or

violence, no passport in his possession, no foreign ties, and no history of evading process. Decl.

of Jeffrey M. Sparrow ¶¶ 13–14 (Dkt. 143-3). U.S. Pretrial Services has reported no concerns.

## II. CO-DEFENDANT DISPARITY UNDER 18 U.S.C. § 3664(H) AND § 3553(A)(6)

The sentencing record discloses a co-defendant disparity that bears directly on both the §

3143(b)(1)(B)(iv) reduced-sentence prong and the substantial-question analysis under Handy,

761 F.2d at 1283.

The arithmetic. On October 3, 2025, the Court ordered co-defendant Jason Allen Greig to

pay restitution in the amount of $11,828,879.00 (Dkt. 113). On March 23, 2026, the Court

ordered Mr. Sparrow to pay the same $11,828,879.00 jointly and severally with Mr. Greig (Dkt.

126). The Presentence Investigation Report prepared for Mr. Sparrow, however, calculated loss

at $17,828,879.00 (PSR ¶ 133), the higher figure that flowed through to the offense-level

enhancement and the Total Offense Level 22 / criminal-history-category I / 41–51 month

advisory range.

The basis for the disparity. At Mr. Greig's sentencing, the Court applied a $6,000,000

credit corresponding to the December 13, 2024 Euler Hermes settlement (CIBC Bank wire, Dkt.

123 Ex. I at 115, ref. "CLAIM SETTLEMENT 12/10/2024"). The arithmetic is direct:

$17,828,879 net exposure, less $6,000,000 insurance recovery, equals $11,828,879, the figure

ordered against Mr. Greig and ultimately ordered against Mr. Sparrow on a joint-and-several

basis.

The Court acknowledged the $6,000,000 insurance recovery on the record at Mr.

Sparrow's sentencing. Sentencing Tr. 27:10–15 (Sealed). It noted that the actual loss to the

victim was greater than the figure to which it was holding Mr. Sparrow accountable, that the

insurance company had paid $6,000,000, and that this approach was consistent with the finding previously made as to Mr. Greig.

The substantial question. Notwithstanding that on-the-record acknowledgment, the $6,000,000 was not applied to reduce the Guidelines loss figure that drove Mr. Sparrow's offense-level enhancement. The Total Offense Level 22 finding rested on a loss figure of $17,828,879, a figure the Court itself had implicitly reduced for restitution purposes. Whether Mr. Sparrow's procedural-reasonableness rights under *Gall v. United States*, 552 U.S. 38, 50–51 (2007), and *United States v. Carty*, 520 F.3d 984, 991–93 (9th Cir. 2008) (en banc), permit the same recovery to function as a Guidelines credit for one co-defendant and not the other is at minimum fairly debatable. Whether 18 U.S.C. § 3664(h), which authorizes apportionment of restitution between co-defendants based on level of contribution and economic circumstances, required the same accounting treatment is a related, fairly debatable question.

Section 3664(h) reflects Congress's recognition that restitution among co-defendants must rest on a defensible apportionment methodology. The record here reflects that Mr. Greig received the direct disbursement of approximately $1,000,000 from the Equinox escrow on the Count 10 wire (EQUINOX_00000040, Dkt. 123 Ex. F at 102) and was independently charged with money laundering (Count 13, to which Mr. Greig pleaded guilty). Mr. Sparrow's verified personal compensation across the relevant period totals $225,274.85 (bank-records review). The disparity in personal benefit, viewed alongside the inconsistent application of the insurance credit, raises a fairly debatable apportionment question for appeal. *See United States v. Treadwell*, 593 F.3d 990, 1002–05 (9th Cir. 2010) (individualized scope-of-undertaking required); *United States v. Zolp*, 479 F.3d 715, 718–19 (9th Cir. 2007) (loss findings reviewed for clear error; personal-gain figure is an alternative measure).

### III. THE LOSS CALCULATION RESTS ON A FAIRLY DEBATABLE METHODOLOGY ERROR UNDER U.S.S.G. § 2B1.1 CMT. N.3(D)

The substantial question framed in Section III rests in significant part on the Guidelines methodology used to arrive at the loss figure. Under the 2024 Guidelines Manual (effective November 1, 2024, the operative version at Mr. Sparrow's March 23, 2026 sentencing), the Application Note 3(D) Credits Against Loss provision provides that "[l]oss shall be reduced by the following:"

"(i) The money returned, and the fair market value of the property returned and the services rendered, by the defendant or other persons acting jointly with the defendant, to the victim before the offense was detected . . . ."

"(ii) In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at the time of sentencing."

U.S.S.G. § 2B1.1 cmt. n.3(D)(i)–(ii) (2024).

Applied to this record, the credits-against-loss analysis runs as follows. The Highmore funding totaled $32,015,153.30 (five First Republic Bank wires; see Dkt. 143-1 § IV.B). The categories of Application Note 3(D) credits, and the supporting record, are:

1. Cash repayments to Highmore before detection: $14,186,273.85 (Application Note 3(D)(i)). Record: HM-FBI00002350; HM-FBI00002348; HM-FBI00002345 (three Opus Bank wires returning principal to Highmore in 2019 and early 2020, prior to the Government's investigation).

2. Hardware collateral pledged to Highmore (conservative appraisal): $16,234,000 (Application Note 3(D)(ii)). Record: 22dot6 Labs Orderly Liquidation Value appraisal (October 2020).

3. Hardware collateral pledged to Highmore (mid appraisal): $17,844,000 (Application Note 3(D)(ii)). Record: Premio Letter of Intent (September 2020).

4. Hardware collateral pledged to Highmore (maximum appraisal): $26,137,500 (Application Note 3(D)(ii)). Record: HYPERAMS USPAP/ASA Orderly Liquidation Value appraisal (July 2020).

5. Insurance settlement received by Highmore: $6,000,000 (U.S.S.G. § 2B1.1 cmt. n.3(A) actual-loss inquiry). Record: CIBC wire of December 13, 2024; Dkt. 123 Ex. I.

Combining cash repayments and insurance settlement with the three appraisal tiers of pledged collateral against the $32,015,153.30 funded yields the following recovery analysis:

a. Conservative tier (22dot6 Labs OLV). $14.19M cash + $6.00M insurance + $16.23M hardware = $36.42M recovered, equal to 113.8% of the funded amount (net surplus to Highmore of $4.41M).

b. Mid tier (Premio LOI). $14.19M cash + $6.00M insurance + $17.84M hardware = $38.03M recovered, equal to 118.8% of the funded amount (net surplus to Highmore of $6.02M).

c. Maximum tier (HYPERAMS OLV). $14.19M cash + $6.00M insurance + $26.14M hardware = $46.32M recovered, equal to 144.7% of the funded amount (net surplus to Highmore of $14.31M).

Under all three appraisal tiers, the credits-against-loss analysis yields a net surplus to Highmore. At minimum, the calibration of "actual loss" required by Treadwell, Zolp, and Hymas

would have produced a Guidelines loss figure substantially below the $17,828,879 PSR figure that drove the +20 enhancement.

The legal questions are fairly debatable. *United States v. Lucas*, 101 F.4th 1158 (9th Cir. 2024) (en banc), adopts the preponderance standard for advisory Guidelines fact-finding. Under that standard, the Government bears the burden to establish loss; the burden cannot be met by adopting a PSR figure that does not address mandatory credits required by Application Note 3(D). United States v. Miller, 953 F.3d 1095 (9th Cir. 2020), distinguishes real loss from intended loss and requires individualized analysis. *United States v. Hymas*, 780 F.3d 1285, 1290 (9th Cir. 2015), articulates the burden-of-proof framework applied to sentencing-loss determinations and the requirement that loss findings rest on competent record evidence. The application of these authorities to a record where (a) cash repayments alone exceed the court-ordered restitution figure, (b) appraised collateral exceeds the funded amount, and (c) the Court itself acknowledged a $6,000,000 insurance recovery without applying it to the Guidelines calculation, presents a substantial question that is at minimum fairly debatable. *United States v. Handy*, 761 F.2d 1279, 1283 (9th Cir. 1985); United States v. Wheeler, 795 F.2d 839, 840 (9th Cir. 1986).

## IV. NEWLY DEVELOPED LOSS EVIDENCE: HIGHMORE'S SWORN ADMISSIONS IN PARALLEL INSURANCE LITIGATION

The credits-against-loss analysis is reinforced by a public court record that materially undercuts the reliability of the $17,828,879 loss figure adopted at sentencing.

In parallel litigation in the Supreme Court of New York, Commercial Division, Highmore Financing Co. I, LLC v. Allianz Trade (formerly Euler Hermes North America Insurance

Company), Index No. 655055/2023, Allianz Trade filed an Amended Counterclaim on November 4, 2024 (NYSCEF Doc. No. 53). The Amended Counterclaim alleged seven categories of material misrepresentations by Highmore in support of its $19,954,515.06 insurance claim, including:

1. Misrepresentation of the Buyer's corporate identity (Highmore told Allianz Trade the buyer was TGC, with a "Permitted Limit"; discovery confirmed the buyer was Datassure, which had no Permitted Limit; Highmore's designated witness at deposition could not recall any documents supporting the represented affiliation);

2. Misrepresentation of the value of the underlying servers (Highmore represented to Allianz Trade that the servers were worth "$2–6 million each"; under oath, Highmore's witness admitted "no basis to even make an estimated guess");

3. Misrepresentation of the source of escrow funding (Highmore repeatedly represented that "Highmore funded the escrow account"; under oath, Highmore's witness admitted that Ninepoint Trade Finance and Highmore Trade Finance funded the escrow, not Highmore Financing Co. I, the insured plaintiff).

The Allianz Trade litigation settled five weeks later for $6,000,000, a fraction of the $19,954,515.06 originally claimed. The settlement is reflected in the December 13, 2024 CIBC wire confirmation that appears as the Government's Exhibit I to its sentencing filing. Dkt. 123 Ex. I at 115.

Mr. Sparrow does not, by this Reply, ask the Court to adjudicate whether Highmore committed insurance fraud or whether the Government's pre-plea disclosure obligations extended to the NYSCEF filing. He asks the Court to recognize, for the limited purpose of evaluating substantial-question status under Handy, that the operative loss figure adopted at sentencing rests

on Highmore's representations of value, server count, and escrow funding that Highmore's own designated witness was unable to support under oath in adversarial litigation. Whether the loss amount under § 2B1.1, calculated under the preponderance standard required by Lucas, can be sustained on a record where the victim's own sworn admissions undercut the foundational valuations is at minimum fairly debatable for appeal.

## V. THE PENDING APPEAL PRESENTS THREE SUBSTANTIAL QUESTIONS

Under 18 U.S.C. § 3143(b)(1)(B), bail pending appeal requires (1) a substantial question of law or fact that is "fairly debatable" among reasonable jurists, and (2) a likelihood that, if resolved in the defendant's favor, would result in reversal, a new trial, a non-imprisonment sentence, or a reduced sentence less than the total of time served plus the expected duration of the appeal. Handy, 761 F.2d at 1281–83; Wheeler, 795 F.2d at 840.

## A. SUBSTANTIAL QUESTION 1: WHETHER THE JANUARY 21, 2025 GUILTY PLEA WAS KNOWING AND VOLUNTARY IN LIGHT OF PRE-PLEA FACTS NOT DISCLOSED TO MR. SPARROW

The Euler Hermes insurance settlement wire cleared on December 13, 2024. Dkt. 123 Ex. I at 115. Mr. Sparrow entered his plea on January 21, 2025, 39 days later. Dkt. 74 (sealed minutes). The plea agreement stipulated to a Total Offense Level of 22 premised on a 20-level loss enhancement at U.S.S.G. § 2B1.1(b)(1)(K). The settlement was not disclosed to Mr. Sparrow before he entered the plea, and was not reflected in the plea agreement's loss stipulation. It first appeared on the public record in the Government's sentencing filing on March 16, 2026, approximately 14 months after the plea. Dkt. 123 at footnote 3 ("Highmore recovered $6 million from an insurance policy, so the loss has been reduced by this amount.").

A guilty plea is valid only if knowing, intelligent, and voluntary. Fed. R. Crim. P. 11(b)(2); *Hill v. Lockhart*, 474 U.S. 52, 56–57 (1985); *Lee v. United States*, 582 U.S. 357, 364–68 (2017). In the plea context, prejudice turns on the defendant's decisionmaking and whether there is a reasonable probability that, but for materially incomplete information, the defendant would not have pleaded guilty. Lee, 582 U.S. at 367 ("the inquiry focuses on a defendant's decisionmaking, which may not turn solely on the likelihood of conviction after trial").

The Ninth Circuit has long recognized that the relationship between Brady and guilty pleas can present substantial issues. Sanchez v. United States, 50 F.3d 1448, 1453 (9th Cir. 1995). Subsequent decisions emphasize that materiality is collective. Kyles v. Whitley, 514 U.S. 419, 433–34 (1995); *United States v. Kohring*, 637 F.3d 895, 902–03 (9th Cir. 2011). Ruiz holds that impeachment information need not be disclosed before a plea but does not insulate the suppression of exculpatory information bearing on the factual basis or the loss calculation. *United States v. Ruiz*, 536 U.S. 622, 629–33 (2002).

Whether the suppression of a $6,000,000 recovery, which reduces the victim's net loss by approximately one-third (from the $17,828,879 PSR figure to the $11,828,879 court-ordered restitution amount), eliminates the gap between the two restitution figures applied to the co-defendants, and bears directly on the offense level driving the plea-stipulated Guidelines range, would have altered the decisionmaking of a rational defendant in Mr. Sparrow's position is fairly debatable. Handy, 761 F.2d at 1283. Mr. Sparrow need not prove that the plea will be vacated on appeal; he must show that the question is substantial. He has done so.

The plea agreement's conviction-appeal waiver expressly preserves a claim that the plea was involuntary, and an involuntary plea cannot sustain an appeal waiver. *United States v. Jeronimo*, 398 F.3d 1149, 1153 (9th Cir. 2005). If the plea is vacated, the waiver falls with it.

**B. SUBSTANTIAL QUESTION 2: WHETHER THE LOSS CALCULATION UNDER U.S.S.G. § 2B1.1 WAS PROCEDURALLY SOUND IN LIGHT OF THE APPLICATION NOTE 3(D) CREDITS-AGAINST-LOSS PROVISION**

The analysis in Section IV, *supra*, establishes the substantial-question content. The Court's adopted offense level of 22 rested on a loss figure of $17,828,879 that did not reflect cash repayments under Note 3(D)(i), hardware collateral under Note 3(D)(ii), or the insurance recovery considered under the § 2B1.1 cmt. n.3(A) actual-loss inquiry. Whether the methodology used at sentencing satisfies the preponderance standard adopted en banc in Lucas, applied to a record where the credits, properly assessed, produce a net surplus to the victim, is fairly debatable. If resolved in Mr. Sparrow's favor, the appropriate Guidelines range would be materially reduced.

**C. SUBSTANTIAL QUESTION 3: WHETHER THE IMPOSED SENTENCE IS PROCEDURALLY REASONABLE UNDER § 3553(A)(6) AND § 3664(H) IN LIGHT OF THE CO-DEFENDANT COMPARISON**

The analysis in Section III, *supra*, establishes the substantial-question content. At sentencing, the Court tied Mr. Sparrow's sentence to Mr. Greig's sentence and found that Mr. Sparrow was not more culpable. Sentencing Tr. 25:11–13 (Sealed). The Court characterized Mr. Greig's 30-month sentence as below what the Court otherwise considered appropriate (Sentencing Tr. 28:20–29:3) and observed that Mr. Greig received a cooperation discount the Government would not have extended absent Mr. Sparrow's exercise of his right to continue the case and change counsel (Sentencing Tr. 19:1–14; 25:13–20). Whether the procedural-reasonableness requirement of Gall, 552 U.S. at 50–51, and Carty, 520 F.3d at 991–93, permits the Court's own co-defendant benchmark to produce identical sentences notwithstanding the

cooperation-driven differential and the inconsistent application of the $6,000,000 insurance

credit is fairly debatable.

## VI. THE THREE SUBSTANTIAL QUESTIONS SATISFY § 3143(B)(1)(B)(IV)

Each of the three substantial questions, resolved in Mr. Sparrow's favor, would likely

result in a remedy described in § 3143(b)(1)(B). Section IV credits-against-loss recalibration, if

applied on remand, would reduce the offense-level enhancement under § 2B1.1(b)(1) by between

14 and 18 levels (from +20 to between +0 and +6, depending on the loss tier). The resulting

Total Offense Level would fall from 22 to between 8 and 14. The corresponding Guidelines

range at Criminal History I would fall from 41–51 months to between 0–6 months and 15–21

months.

The relevance of this calibration to § 3143(b)(1)(B)(iv) is direct. The Ninth Circuit appeal

in this case is in its early stages, with the opening brief scheduled later in 2026. The total of time

already served plus the expected duration of the appeal, conservatively estimated at 12–18

months, exceeds the lowest two recalibrated ranges and a significant portion of the highest. A

favorable resolution of any one of the three substantial questions identified above is likely to

produce a sentence less than the total of time already served plus the expected duration of the

appeal process. § 3143(b)(1)(B)(iv).

The April 16, 2026 amendment to U.S.S.G. § 2B1.1 (Amendment 2, Inflationary

Adjustments to Monetary Tables), effective November 1, 2026, provides additional and

independent support. The amendment lowers the advisory range applicable to the present loss

figure from 41–51 months to 33–41 months. If any of the three substantial questions results in

vacatur or remand, re-sentencing on or after November 1, 2026 will apply the recalibrated table under the standard rule that the court applies the Guidelines in effect on the date of sentencing.

## VII. IN THE FURTHER ALTERNATIVE: A 14-DAY ADMINISTRATIVE STAY OF SURRENDER

If the Court declines to grant the August 20 extension and declines to grant release pending appeal under § 3143(b), Mr. Sparrow requests, as a further fallback, a 14-day administrative stay of the June 1, 2026 surrender date to permit the Ninth Circuit a meaningful opportunity to act on a motion under FRAP 9(b). This Court has authority to grant such a stay under 18 U.S.C. § 3143(b), FRAP 9(b)–(c), and the Ninth Circuit's practice under Circuit Rule 9-1.2 (as amended effective June 1, 2024, abrogating the former automatic-stay-upon-filing provision). *See Nken v. Holder*, 556 U.S. 418, 426 (2009) (four-factor stay framework); *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (same).

Without a brief administrative stay, the practical relief available from any Ninth Circuit ruling on release pending appeal, namely, Mr. Sparrow's continued liberty during the pendency of the appeal, will be substantially impaired or extinguished before the Ninth Circuit has a meaningful opportunity to consider the motion. Incarceration that cannot be undone is precisely the irreparable harm that bail pending appeal is designed to prevent. Hilton, 481 U.S. at 778–79.

The factors enumerated in Section II, *supra*, fully support the Court's existing § 3143(a)(1) finding that Mr. Sparrow is not a flight risk and poses no danger to any other person or the community. The Government has offered no contrary evidence, and the Court's prior finding remains undisturbed.

## CONCLUSION

For the foregoing reasons, Mr. Sparrow respectfully requests that this Court:

**1.**        Extend the self-surrender date from June 1, 2026 to August 20, 2026, to permit Mr. Sparrow to remain present through the August 6, 2026 home delivery of his son and the immediate 14-day postpartum recovery window;

**2.**        In the alternative, order Mr. Sparrow's release pending appeal under 18 U.S.C. § 3143(b)(1), continuing all existing conditions of release with such additional conditions (including location monitoring) as the Court deems appropriate;

**3.**        In the further alternative, enter a 14-day administrative stay of the June 1, 2026 surrender date, to approximately June 15, 2026, to permit the Ninth Circuit a meaningful opportunity to consider a motion for release pending appeal; and

**4.**        Grant any such other and further relief as the Court deems just.

---

**1** A Notice of Errata correcting an inadvertent citation in Dkt. 143-1, Section IV.F (substituting *United States v. Treadwell*, 593 F.3d 990 (9th Cir. 2010), *United States v. Zolp*, 479 F.3d 715 (9th Cir. 2007), and *United States v. Hymas*, 780 F.3d 1285 (9th Cir. 2015) for the previously-cited authority) has been filed contemporaneously with this Reply. The substantive argument is unchanged.

**2** All references to the March 23, 2026 sentencing transcript are paraphrased and cite only to page and line numbers. The transcript itself remains under seal. Counsel obtained access to the digital recordings of the plea hearing and sentencing pursuant to this Court's order at Dkt. 130 (Apr. 15, 2026), and access to the transcript of the plea hearing pursuant to this Court's order at Dkt. 135 (Apr. 17, 2026), for use in connection with the pending Ninth Circuit appeal (No. 26-2026). The paraphrases herein preserve the substance of the cited record consistent with the seal.

**3** *See*, e.g., *United States v. D'Antonio*, No. 8:13-cr-00208 (C.D. Cal. July 2017) (Carter, J.) (granting ex parte application to continue voluntary surrender to permit defendant to address family circumstances).

**Respectfully submitted,**

Dated: May 28, 2026

**/s/ Barry D. Silbermann**
BARRY D. SILBERMANN
California Bar No. 69402
Law Office of Barry D. Silbermann
3896 Carpenter Avenue
Studio City, California 91604
Telephone: (310) 702-6699
Email: bdspc@aol.com
Counsel for Defendant Jeffrey Michael Sparrow

## CERTIFICATE OF SERVICE

I hereby certify that on May 28, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Central District of California by using the CM/ECF system. All participants in the case are registered CM/ECF users, and service will be accomplished by the CM/ECF system.

**/s/ Barry D. Silbermann**
BARRY D. SILBERMANN
Counsel for Defendant Jeffrey Michael Sparrow